UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ARTHUR LEON JONES, et al.,

        Plaintiffs,              Case No. 1:19-cv-99

v.                                   Honorable Gordon J. Quist

HEIDI WASHINGTON et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Washington, Skipper, Arts, and Bonn. In addition, Plaintiff Palmer will be dismissed from this action.

**Discussion**

I. Factual Allegations

Plaintiff Jones is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff Palmer is Plaintiff Jones' mother. Plaintiffs sue MDOC Director Heidi Washington, Warden G. Skipper, Deputy F. Arts, Facility Inspector Unknown Bonn, Mailroom Staff R. Zammaron, and Prison Counselor Michael Sun.

Plaintiff Jones alleges that on June 12, 2018, he asked Plaintiff Palmer to send him the criminal trial transcripts, police reports, and discovery materials that were a part of his criminal prosecution in *People v. Jones*, Case Number 12-4957-FC. Plaintiff Jones states that he needed access to these documents in order to prepare his motion for relief from judgment pursuant to MCR 6.500 *et seq*. On June 16, 2018, Plaintiff Palmer mailed the requested legal documents to Plaintiff Jones in accordance with MDOC Policy Directive 05.03.118. On June 21, 2018, Plaintiff Jones received a notice of mail rejection from Defendant Zammaron indicating that his mail was too voluminous to search. In the rejection notice, Defendant Zammaron specifically states that the mail was "Unduly burdensome to search and thus poses a threat to custody and security."

Plaintiff Jones asserts that Policy Directive 05.03.118 does not prohibit a prisoner's incoming mail merely because it is voluminous. Plaintiff Jones states that the only limitation on the size of incoming mail is set forth in the personal property limitation in Policy Directive 04.07.112. Policy Directive 05.03.118 states that personal correspondence and photographs are permitted to be received from any source.

2

On June 22, 2018, Plaintiff Jones told Defendant Sun that the mail being rejected consisted of legal documents related to Plaintiff Jones' criminal conviction. Defendant Sun told Plaintiff Jones that if all the documents were indeed legal, he would allow Plaintiff to have them at the conclusion of an administrative hearing. On June 25, 2018, Defendant Sun told Plaintiff that he had reviewed the package of legal documents and that as soon as he looked through everything, he would get it to Plaintiff Jones. Defendant Sun stated that the only problem with the package was that it totaled over sixteen hundred pages of documents from a court and that there was no obvious reason to reject the package.

On July 3, 2018, Plaintiff Jones filed a grievance against Defendants Skipper, Arts, Hill and Zammaron, stating that the mail rejection violated his First and Fourteenth Amendment rights. On July 29, 2018, Plaintiff Jones received a copy of a letter from Plaintiff Palmer, which she had written in opposition to the June 21, 2018, mail rejection. Plaintiff Palmer's letter had pointed out that mail could not be rejected solely because it was voluminous. On July 7, 2018, Plaintiff Jones received a second notice of mail rejection, which stated that it was being rejected pursuant to Policy Directive 04.07.112 (prisoner personal property) because it contained binders and stickers which could not be searched without destroying it. Plaintiff Jones states that the policy in effect at that time provided that prisoners were permitted "to possess legal property which consisted of pleadings and other documents ordinarily filed with a court, research notes, exhibits, law book, legal periodicals and similar written documents and items necessary for litigation which the prisoner is currently pursuing on his/her own behalf, subject to PD 05.03.118, 'Prisoner Mail.'" (ECF No. 1, PageID.7.) Plaintiff Jones states that the policy also allowed a prisoner to possess "[p]leadings, transcripts, court orders and court opinions arising out of the criminal case for which the prisoner is currently serving, even if there is no pending litigation." (*Id.*)

3

On July 9, 2018, Defendant Sun came to Plaintiff Jones' cell and stated that Plaintiff would regret filing a grievance. According to the complaint, Defendant Sun stated:

> You're not getting your fucking legal documents Jones. I didn't tell you to file a grievance against Zammaron about your rejected mail. And your mother's little smart letter to the Warden's office won't save your legal mail either, we've changed the mail rejection (meaning him and Zammaron) anyway to say that there is contraband in it. How you like that. You won't file no more grievances will you, I bet you won't!

(ECF No. 1, PageID.8.)

On July 11, 2018, Plaintiff Jones filed a grievance on Defendant Zammaron for the second mail rejection. Plaintiff Jones claims that the second mail rejection was written in retaliation for the grievance he had filed on Defendant Zammaron regarding the first mail rejection. Plaintiffs Jones and Palmer claim that Defendants Zammaron and Sun discriminated against them when they rejected Plaintiff Jones' legal mail simply because it was not sent by an attorney. Plaintiff Jones asserts that MDOC policy allows written correspondence from any source and does not prohibit legal publications or documents from a non-attorney. Plaintiff asked for an opportunity to review the contents of the package in order to prepare a defense to the rejection, but Defendant Sun refused. Defendant Sun stated that he had told Plaintiff Jones not to file a grievance, and that he would have given him the legal documents if Plaintiff had followed his advice. Defendant Sun conducted a hearing on the second mail rejection on July 12, 2018, but Plaintiff did not receive notice of the hearing until July 14, 2018, which deprived him of the ability to attend the hearing in violation of his due process rights. Plaintiff also states that he was never allowed to review the documents.

On July 18, 2018, Defendants Sun and Zammaron responded to Plaintiff Jones' grievance by stating that his mail was being rejected because it contained three hole binders, tabs, and stickers. Plaintiff Jones asserts that if this was true, it would have been cited as the reason for

4

the original rejection. On July 30, 2018, Assistant Resident Unit Manager Reed responded to Plaintiff Jones' grievance appeal by stating:

> PC Sun conducted an administrative hearing on 7/12/18 at which time the item was determined [sic] more that 1500 pages of materials which contained contraband were not to enter the facility. PC Sun states he did not allow the grievant to view the rejected mail and failed to not (do) this and [note] the reason in the administrative hearing as required. Administrative steps in the form of Prisoner Mail policy review have been taken to insure this does not happen again.

*See* ECF No. 1, PageID.12. Plaintiff Jones states that despite Assistant Resident Unit Manager Reed's response, no corrective action was taken.

Plaintiff Jones claims that Defendants Zammaron and Sun engaged in a conspiracy with Defendants Skipper and Arts, which deprived Plaintiff of his trial and sentencing transcripts and caused him to suffer an injury to his pending motion for relief from judgment. Plaintiff Jones states that despite being aware of the illegal seizure of legal materials by Defendants, the trial court made a decision on his motion for relief from judgment without considering the trial and sentencing transcripts.

Plaintiff Palmer asserts that the documents that she mailed to Plaintiff Jones did not contain any 3 ring metal binders, stickers, or tabs. On June 24, 2018, after being informed of the package rejection, Plaintiff Palmer sent a letter to the prison objecting to the rejection by asserting that the pertinent policy directive did not allow incoming mail to be rejected for being too voluminous. Plaintiff Palmer states that the second mail rejection, dated July 14, 2018, falsely stated that the package contained the prohibited binders, stickers, and tabs.

Plaintiffs claim that Defendants' conduct violates the First and Fourteenth Amendments. Plaintiffs seek compensatory and punitive damages.

5

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiffs fail to make specific factual allegations against Defendants Washington and Bonn, other than to claim that they failed to conduct an investigation in response to Plaintiff Jones' grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiffs have failed to allege that Defendants Washington and Bonn engaged in any active unconstitutional behavior. Accordingly, they fail to state a claim against them.

Plaintiffs cannot show that the rejection of Plaintiff Jones' mail violated their First Amendment associational rights. The First Amendment associational rights of non-prisoners are no greater than the rights of prisoners with whom they wish to associate. *Sabin v. Karber,* No. 1:14-CV-296, 2017 WL 4160950, at *19 (W.D. Mich. Sept. 20, 2017). Because the rejection of a

single package does not prevent Plaintiffs from associating with one another, they fail to state such a claim.

Plaintiffs assert that the seizure and rejection of Plaintiff Jones' incoming mail violated their Fourteenth Amendment due process rights. Plaintiffs' due process claims are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiffs' claims are premised upon allegedly unauthorized acts of a state official, they must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiffs have not sustained their burden in this case. Plaintiffs have not alleged that state post-deprivation remedies are inadequate. Pursuant to MDOC Policy Directive 05.03.118:

> VV. Whenever mail addressed to a prisoner is opened and believed to be in violation of policy, a Notice of Package/Mail Rejection (CSJ-316) shall be completed and promptly sent to the prisoner, except as set forth in Paragraph F. The Notice shall identify the specific item believed to be in violation of this policy and why the item is believed to be in violation of policy. A copy of the Notice shall also be sent to the person or entity that sent the mail if a return address is identified.

8

WW. Unless the prisoner waives his/her right to a hearing in writing by choosing an allowable disposition for the item, and the prisoner and staff agree on the appropriate disposition of the item, a prompt hearing shall be conducted pursuant to Administrative Rule 791.3310 to determine if the mail violates policy for the reason(s) identified in the Notice of Package/Mail Rejection (CSJ-316) and, if so, the appropriate disposition of the mail. The hearings officer shall not be the person who issued the Notice.

XX. If a hearing is conducted, an Administrative Hearing Report (CSJ-144) shall be completed by the hearings officer. The prisoner shall be provided the opportunity to review the mail or a copy of the mail at the hearing unless the review itself would threaten the order and security of the facility, encourage or provide instruction in criminal activity, or interfere with the rehabilitation of the prisoner. If the prisoner is not permitted to review the mail or a copy of the mail at the hearing, the hearings officer shall state the reason for that decision on the Administrative Hearing Report. If a summarization was provided for correspondence written in a foreign language, the hearings officer shall review the summarization prior to issuing a finding. The hearings officer may request a full written translation of the correspondence if necessary to issue the finding.

YY. If the hearings officer finds that the mail does not violate this policy, the mail shall be returned to the mailroom to determine if any other violations of policy exist. If other violations exist, the mail shall be processed as set forth in Paragraph VV through XX. If there is no other reason to reject the mail pursuant to this policy, the mail shall be promptly delivered to the prisoner unless it is determined by the Warden or designee that the hearings officer's decision was not supported by policy and a rehearing is ordered.

ZZ. If the hearings officer finds that the mail violates this policy, the hearings officer shall determine the appropriate disposition of the mail as set forth in Paragraph HHH. The disposal option chosen by the hearings officer shall be specifically stated on the Administrative Hearing Report. The hearings officer may take into consideration the prisoner's choice of disposition in making that determination but shall identify only one disposal option on the hearing report.

In addition, Policy Directive 05.03.118 also provides that a prisoner who is unhappy with the outcome of his hearing may appeal by filing a grievance or by sending a letter to the Warden:

EEE. A prisoner who disagrees with the outcome of a hearing may file a grievance as set forth in PD 03.02.130 "Prisoner/Parolee Grievances." If the publication was referred to the CFA Deputy Director or designee for a final determination pursuant to Paragraph BBB, however, the grievance should not be filed until a final determination has been made.

FFF. Within ten business days after the date of the Notice, the sender may appeal the proposed rejection by sending a letter to the Warden. An appeal received by any other facility staff shall be referred to the Warden as soon as possible. If the mail was referred to the CFA Deputy Director or designee pursuant to Paragraph BBB, the Warden shall not respond to the sender until a decision is made by the CFA Deputy Director or designee. If the mail was rejected because it was already on the Restricted Publications List, the sender's appeal shall be forwarded to the CFA Deputy Director or designee through the appropriate chain of command for review. In all circumstances, the sender shall be notified in writing whether the appeal is granted or denied. If the appeal is granted, that decision shall be noted on the Administrative Hearing Report and the mail promptly delivered to the prisoner.

Plaintiff Jones attaches a copy of the hearing report to his complaint. Plaintiff Jones' hearing was held on July 12, 2018. The hearing report indicates that Plaintiff was present during the hearing. Defendant Sun conducted the hearing and found that all of the roughly 1500 pages in the rejected mail were in plastic binders with metal tabs, as well as stickers on pages. Defendant Sun upheld the mail rejection and noted that Plaintiff Jones had 15 days to send the mail back to Plaintiff Palmer or to another address at his expense. Otherwise the mail would be considered abandoned property and be destroyed. *See* ECF No. 1-1, PageID.71.

Plaintiff Jones attaches a copy of his grievance forms to his complaint. Plaintiff filed Grievance No. 1807-1402-15A on July 8, 2018, asserting that the rejection of his mail was improper. Plaintiff's step I grievance was denied by Assistant Resident Unit Manager Reed on July 17, 2018. In the grievance response, Reed stated:

> The original mail rejection was for voluminous mail, [Defendant Zammaron] on 7/9/18 sent a follow up email stating the mail was now going to be rejected because it contained stickers and folder[s] which were attached to the paper.
>
> [Defendant] Sun "voluminous" is no longer in policy but that the mail even though it was large in quantity also contained clear binders with multiple tabs and stickers. The mail was rejected via administrative hearing on 7/12/18.
>
> Paragraph "OO" ability to effectively search may be applied to large amounts of mail. This mail did contain contraband therefore was not allowed to enter the facility. [Defendant] Sun properly determined this in his administrative hearing.

10

*Id.* at PageID.48. Plaintiff filed a step II appeal, which was denied on November 18, 2018, by Defendant Skipper. *Id.* at PageID.50.

Plaintiff Jones filed Grievance No. 1807-1483-15A on July 11, 2018, asserting that his rights were violated when the first mail rejection was replaced by another rejection on the same item of mail. This grievance was summarily denied by B. Pierce. *Id.* at PageID.60. Plaintiff's step II appeal was denied on November 18, 2018, by Defendant Skipper, who noted that there is no provision against amending or submitting a new rejection for an item received in the mail. *Id.* at PageID.62.

Plaintiff Jones filed Grievance No. 1807-1481-07F on July 10, 2018, asserting that he had an administrative hearing with Defendant Sun on July 3, 2018, and that Defendant Sun told him that he would give Plaintiff the hearing report by July 5, 2018. Plaintiff states that he never received the hearing report. Plaintiff further stated that he had two Notices of Intent for mail rejection, but only received one hearing. *Id*. at PageID.64. This grievance was denied by Assistant Resident Unit Manager Reed on July 18, 2018, who noted that a hearing was held on July 12, 2018. Defendant Skipper denied Plaintiff's step II appeal on November 18, 2018. *Id.* at PageID.67. Plaintiff's step III appeal was denied by the Office of Legal Affairs on November 30, 2018. *Id.* at PageID.69.

Plaintiff Jones filed Grievance No. 1807-1548-15A on July 16, 2018, stating that Defendant Sun never allowed him to review the rejected mail. *Id.* at PageID.73. Assistant Resident Unit Manager Reed responded to the grievance by acknowledging that Defendant Sun had failed to allow Plaintiff to review the mail, and had also failed to note this and state the reason in the administrative hearing as required by policy. Reed further stated that a prisoner mail policy

11

review had been taken to insure that such an error did not occur in the future. *Id.* at PageID.74. Plaintiff appealed to step III, but his appeal was denied on December 20, 2018. *Id.* at PageID.77.

Plaintiff Jones filed Grievance No. 1807-1549-07Z on July 16, 2018, on Defendants Zammaron, Skipper, and Sun for the rejection of his mail. *Id.* at PageID.80. In this grievance, Plaintiff Jones asserted that two hearings were held on the same mail rejection. Assistant Resident Unit Manager Reed noted that only one hearing was held and that there was no violation of policy. *Id.* at PageID.81. Plaintiff Jones' step II appeal was denied on December 5, 2018, by Defendant Skipper. *Id.* PageID.83. Plaintiff's step III appeal was denied on December 20, 2018, by the Office of Legal Affairs. *Id.* PageID.85.

In order to satisfy due process, the post-deprivation remedy does not have to guarantee a successful outcome, nor is it required to provide relief equivalent to that available in a § 1983 action. *See Parratt*, 451 U.S. at 543-44. As the Supreme Court has instructed: "Although the state remedies may not provide . . . all the relief which may have been available . . . under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process." *Parratt*, 451 U.S. at 544. Due process only requires that an adequate post-deprivation remedy be available when the deprivation of property occurs. *Id.* at 544. The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995). Because there were adequate post-deprivation remedies available to Plaintiffs, their due process claims are properly dismissed.

Plaintiffs also claim that Defendants violated their equal protection rights when they treated Plaintiff Jones' incoming legal mail, which was sent by Plaintiff Palmer, differently than it would have been treated had it been sent by an attorney. The Equal Protection Clause of

the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Because Plaintiff Palmer is not similarly situated to an attorney, Plaintiffs' equal protection claim is properly dismissed.

Plaintiffs claim that Defendants Zammaron and Sun engaged in a conspiracy with Defendants Skipper and Arts, which deprived Plaintiff Jones of his trial and sentencing transcripts and caused him to suffer an injury to his pending motion for relief from judgment. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Plaintiffs' allegations of conspiracy are conclusory and speculative. Therefore, Plaintiffs' conspiracy claims are properly dismissed.

The Court notes that Plaintiff Jones' First Amendment retaliation and access to courts claims against Defendants Zammaron and Sun are not clearly frivolous and may not be dismissed on initial review.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Washington, Skipper, Arts, and Bonn will be dismissed from this action for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiffs' due process, equal protection and conspiracy claims. Plaintiff Jones' First Amendment retaliation and access to courts claims against Defendants Zammaron and Sun remain in the case. Because the remaining claims do not pertain to Plaintiff Palmer, she is properly dismissed from this action.

An order consistent with this opinion will be entered.

Dated: June 14, 2019                             /s/ Gordon J. Quist
                                                 GORDON J. QUIST
                                                 UNITED STATES DISTRICT JUDGE