UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARTHUR LEON JONES

        Plaintiff,

v.

HEIDI WASHINGTON, *et al.*,

        Defendants.
_____/

Case No. 1:19-cv-99

Hon. Gordon J. Quist

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by *pro se* plaintiff Arthur Leon Jones (referred to as plaintiff or "Jones") against six defendants pursuant to 42 U.S.C § 1983.[1] Jones is a prisoner in the custody of the Michigan Department of Corrections (MDOC). Two defendants remain in this case, mailroom employee R. Zamarron (named as "Zammaron") and prison counselor (PC) Michael Sun. This matter is now before the Court on a motion for summary judgment filed by defendants Zamarron and Sun (ECF No. 34).

    **I.**    **Complaint**

Jones filed this action on February 7, 2019. *See* Compl. (ECF No. 1). Jones alleged that Zamarron and Sun wrongfully rejected mail sent to him by his mother which included transcripts and other materials related to his state criminal case, *People v. Jones*, Lake County

---

[1] A co-plaintiff, Lovie Mae Palmer, has been dismissed.

1

Circuit Court case no. 12-4957-FC.  *Id*. at ¶ 1, PageID.3.   Jones alleged that defendants' rejection of this mail caused his motion for relief from judgment to be filed without "a meaningful argument" and that he "will be forced to endure a forty-year sentence for a crime that he is actually innocence [sic] of having committed."  *Id*. at ¶ 76, PageID.22.

Jones alleged that the mail at issue consists of a large box of materials containing about 1600 pages which his mother mailed to him on June 16, 2018.  *Id*. at PageID.5.   On June 21, 2018 mailroom employee Zamarron rejected the mail as too voluminous.  *Id*. at PageID.4. Specifically the June 16, 2018, "Notice of Package/Mail Rejection" stated "1 BOX 12X10X15 FULL OF PAPERS TOO VOLUMINOUS TO EFFECTIVELY SEARCH."   Mail Rejection (June 21, 2018) (ECF No. 1-1, PageID.31).   Zamarron cited MDOC Policy Directive (PD) 05.03.118 ("Prisoner Mail") as follows:

> Item D – Unduly burdensome to search and thus poses a threat to custody and security.   Too voluminous to effectively search for all contraband.

*Id*.  Jones reviewed the policy, concluded that it did not restrict voluminous mail, incorrectly referred to the box as legal mail, and filed a grievance on July 3, 2018.[2]   Compl. at PageID.4-5; Grievance RMI-18-07-1402-15A ("1402") (ECF No. 1-1, PageID.47).   In Grievance 1402, Jones complained that former defendant Warden Gregory Skipper, former defendant Deputy of Security

---

[2]  The box sent by Jones' mother is not "legal mail" as Jones' alleged (Compl. at ¶¶ 12-13, PageID.5).   *See* PD 05.03.118 ¶ FF (eff. 03/01/2018):

A prisoner may have his/her prisoner may have his/her incoming legal mail receive special handling by submitting a completed Mail Requiring Special Handling form (CSJ-246) to the institution's mailroom supervisor or designee. <u>Only mail received directly from an attorney or a law firm, a legitimate legal service organization, the Department of Attorney General, a prosecuting attorney's office, a court, a clerk of the court, a Friend of the Court office, or the Office of the Legislative Corrections Ombudsman is considered legal mail, and only if the mail is clearly identified on the face of the envelope as being from one of the above</u>. It is not sufficient for the envelope to be simply marked "legal mail."

*See* PD 05.03.118 (ECF No. 1-1, PageID.37) (emphasis added).

2

F. Artis, Inspector Hill and current defendant Zamarron violated his First and Fourteenth Amendment rights to due process "where his mail is rejected for being too voluminous."

On July 6, 2018, Zamarron wrote a new rejection for the same mail:

> 1 BOX 12X10X15 FULL OF PAPERS WITH BINDERS AND STICKERS NOT ABLE TO SEARCH WITH OUT DESTROYING NOT SENT FROM AN ATTORNEY CHANGED REJECTION FROM VOLUMINOUS WRITEN [sic] ON 6/21/18[.]

Mail Rejection (July 6, 2018) (ECF No. 1-1, PageID.56). The second rejection was based on PD 04.07.112 ("Prisoner Personal Property") as follows:

> Not approved property. Mail containing physical contraband, which is defined as any property that is not SPECIFICALLY authorized to possess [sic] or is from an unauthorized source.

*Id*. Jones filed another grievance, claiming that the second notice was "fabricated." Compl. at PageID.7.

Defendant Sun conducted a hearing on the mail rejection as changed on July 6, 2018. Administrative Hearing Report (July 12, 2018) (ECF No. 1-1, PageID.71). The hearing was based on the following staff member statement:

> A box (12x10x15) full of papers and stickers; not able to search effectively without destroying; not sent from an attorney. Change rejection from voluminous written on 6/21/18.
>
> Per PD 04.07.112 PRISONER PERSONAL PROPERTY. "Mail containing physical contraband, which is defined as any property that is not specifically authorized to possess or is from an unauthorized source.["]

*Id*. The prisoner gave the following statement:

> Prisoner was present for the hearing and stated, "What binders? What stickers? They're tabs. These are fraudulent claims."

3

*Id*.[3]  After the hearing, Sun determined that the mail violated policy for the reasons stated in the notice:

> I find that per PD 04.07.112 PRISONER PERSONAL PROPERTY, "Mail containing physical contraband, which is defined as any property that is not specifically authorized to possess or is from an unauthorized source." All roughly 1,500 pages are in plastic binders with metal tabs as well as stickers on pages. The decision is upheld.
>
> Prisoner is advised that disposition of this hearing can be appealed through the grievance process.

*Id*. Sun further stated,

> Prisoner has 15 days, from the date of this hearing to send the mail back at his expense, send the letter [sic] at his expense to another address, or have it destroyed. Otherwise, it will be treated as abandoned property and be destroyed according to policy.

*Id*.

Jones appealed the decision in grievance RMI-18-07-1548-15A ("1548"). *See* Grievance 1548 (ECF No. 1-1, PageID.73). In this grievance, Jones contested PC Sun's procedure, because Sun did not allow him to view the rejected items at the hearing. *Id*. Jones' grievance was upheld at Step I in this respect because PC Sun should have provided an explanation for this procedure. The grievance response stated that the applicable policy directives were found in PD 05.03.118 (Prisoner Mail):

> NN.   Prisoners are prohibited from receiving mail that may pose a threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with the rehabilitation of the prisoner.
>
> XX.   The prisoner shall be provided the opportunity to review the mail or a copy of the mail at the hearing unless the review itself would threaten the order and

---

[3] At his deposition, Jones testified that his mother told him that the papers were placed in plastic binders. *See* Jones' Dep. (ECF No. 35-3, PageID.313-315).

> security of the facility, encourage or provide instruction in criminal activity, or interfere with the rehabilitation of the prisoner.  If the prisoner is not permitted to review the mail or a copy of the mail at the hearing the hearings officer shall state the reason for that decision on the Administrative Hearing Report.

*Id*. at PageID.74.

The response contained the following summary:

> PC Sun conducted an administrative hearing on 7/12/18 at which time the item was determined more than 1500 pages of material which contained contraband not to enter the facility.  PC Sun states that he did not allow the grievant to view the rejected mail and failed to not [sic] this and the reason in the administrative hearing as is required.
>
> Administrative steps in the form of Prisoner Mail policy review have been taken to insure this does not happen again.

*Id*.  Jones appealed to Step II but did not include a copy of that response.  Defendants provided a copy of the Step II response, which summarized Jones' grievance as "you claim your rights were violated as you were not permitted the opportunity to review your mail which was rejected," noted that Jones re-asserted this claim at Step II, and denied the appeal stating,

> The response provided at Step I is found to [sic] detailed and appropriate. Administrative measures have been taken to ensure staff has a proper knowledge of prisoner mail policy and procedures.

Defendants' Reply (ECF No. 44-4, PageID.481).  The MDOC denied a Step III appeal, stating in part, "[u]pon examination it has been determined that your issue was in fact considered, investigated, and a proper decision was rendered."  Grievance 1548 at PageID.77.

The gist of Jones' retaliation claim is that the second rejection dated July 6, 2018, was done in retaliation for Jones engaging in protected conduct on July 3, 2018, when he filed Grievance 1402.  Compl. at PageID.5-6.  Jones alleged that defendants committed two adverse actions.  Zamarron's adverse action was writing the second notice of mail rejection.  *Id*. at ¶ 25,

5

PageID.8-9.  Sun's adverse action was holding the administrative hearing on that "bogus" mail rejection.  *Id*. at ¶ 30, PageID.10.

Jones also alleged that defendants Sun and Zamarron denied him access to the Courts in violation of the First Amendment because they illegally seized his "legal documents/publications" and, as a result, "[p]laintiff's post-conviction motion for relief from judgment was not filed with a meaningful argument, thusly, [p]laintiff will be forced to endure a forty-years sentence for a crime he is actually innocence [sic] of having committed."  *Id*. at ¶ 76, PageID.22.  In support of this claim, Jones alleged that his motion for relief from judgment was incomplete, because he "needed his trial and sentencing transcripts to perfect his arguments therein."  *Id*. at ¶ 47, PageID.13.  For this reason, he could not challenge his habitual offender sentence.  *Id*.  Jones alleged that the state trial court ignored a motion for production of trial transcripts and "made a decision on [p]laintiff's motion for relief from judgment without considering the trial and sentencing transcripts."  *Id*. at ¶ 48.  Jones attached some portions of the state trial court documents related to his motion for relief from judgment.  *See* discussion, *infra*.

On initial screening, this Court dismissed all claims except Jones' First Amendment retaliation and access to courts claims against defendants Zamarron and Sun.  *See* Opinion (ECF No. 4, PageID.141).

### II. Motion for summary judgment

### A. Legal standard for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the Court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable

7

jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).[4]

### B. Retaliation

Jones seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

To prove a First Amendment retaliation claim, a plaintiff must establish three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*,

---

4 The Court notes that Jones attempted to file a "verified complaint" pursuant to 42 U.S.C. § 1746. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (a verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment). Section 1746(2) provides that any matter which "is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury." Such statements must be made in substantially the following form "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)". 28 U.S.C. § 1746(2). Here, Jones does not state that his alleged facts are "true and correct". Rather, Jones made up his own language, stating "Plaintiffs declare, that the forgoing is true and correct, to the best of their information, knowledge, and belief, pursuant to 28 U.S.C. § 1746, under the penalty of perjury." Compl. (ECF No. 1, PageID.25). Furthermore, summary judgment cannot be granted on basis of Jones' information and belief. *See Ondo v. City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015) ("statements made on belief or on information and belief, cannot be utilized on a summary-judgment motion") (internal quotation marks omitted).

175 F.3d 378, 394 (6th Cir. 1999).

A prisoner must be able to prove that the exercise of the protected right was the substantial and motivating factor in the defendant's alleged retaliatory conduct.

> As a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech. If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim.

*Nieves v. Bartlett*, -- U.S. --, 139 S. Ct. 1715, 1722 (2019) (internal quotation marks and brackets omitted).  Defendants contend that Jones' retaliation claims fail because there were no adverse actions.

### 1. PC Sun

As discussed, PC Sun held an administrative hearing as required by MDOC policy. PageID.71. In this regard, PD 05.03.118 provides,

> WW.   Unless the prisoner waives his/her right to a hearing in writing by choosing an allowable disposition for the item, and the prisoner and staff agree on the appropriate disposition of the item, <u>a prompt hearing shall be conducted pursuant to Administrative Rule 791.3310 to determine if the mail violates policy for the reason(s) identified in the Notice of Package/Mail Rejection (CSJ-316) and, if so, the appropriate disposition of the mail</u>. The hearings officer shall not be the person who issued the Notice.   . . .
>
> YY.    If the hearings officer finds that the mail does not violate this policy, the mail shall be returned to the mailroom to determine if any other violations of policy exist. If other violations exist, the mail shall be processed as set forth in Paragraph VV through XX. If there is no other reason to reject the mail pursuant to this policy, the mail shall be promptly delivered to the prisoner unless it is determined by the Warden or designee that the hearings officer's decision was not supported by policy and a rehearing is ordered.

PD 05.03.118 (PageID.41) (emphasis added).

9

As a hearing officer, Sun was required to hold a hearing to determine whether the rejected mail violated an MDOC policy. Acting as a hearing officer at a required hearing is not "adverse action" taken against Jones "that would deter a person of ordinary firmness from continuing to engage in that conduct." *Thaddeus-X*, 175 F.3d at 394. The hearing was a routine prison procedure to address rejected mail. Accordingly, defendant Sun's motion for summary judgment should be granted as to Jones' retaliation claim.

### 2. Mailroom employee Zamarron

Defendants contend that Jones' retaliation claim against Zamarron fails because there was no adverse action. The timeline for this alleged retaliation claim is as follows: on June 21, 2018, Zamarron rejected the mail as too voluminous to effectively search for all contraband; on July 3, 2018, Jones filed Grievance 1402 questioning the basis of the rejection; then, on July 6, 2018, Zamarron changed the basis of rejection to mail containing physical contraband.

The issue for the Court is whether Jones suffered an adverse action when Zamarron changed the basis of the mail rejection from an arguably incorrect basis (too voluminous) to the correct basis (physical contraband). Jones theory is that Zamarron retaliated against him for filing the grievance. Assuming, for purposes of this report, that Jones' grievance caused Zamarron to change and correct the basis for rejecting the box of binders, the Court concludes that Zamarron's conduct was not an "adverse action" which would deter a person of ordinary firmness from filing a grievance. In this instance, Zamarron became aware of his error in the original rejection under PD 05.03.118 and issued a new notice which corrected this error by rejecting the mail as contraband under PD 04.07.112. PC Sun found that the rejection was appropriate under the second notice.

Jones suffered no harm from Zamarron's actions. While Zamarron originally rejected the box because he could not effectively search it for contraband, Jones would not receive the box because it did contain contraband. Even if Zamarron had not corrected the original notice, then PC Sun would have sent the mail back to determine if other violations existed. *See* PD 005.03.118 ¶ YY ("If the hearings officer finds that the mail does not violate this policy, the mail shall be returned to the mailroom to determine if any other violations of policy exist."). Here, Zamarron's second notice correctly identified the violation. Assuming, for purposes of this report, that Zamarron corrected the notice in response to Jones' grievance, Zamarron's correction saved the prisoner and the MDOC from the potential of having multiple hearings on the same mail and properly framed the rejection issue for the administrative hearing. "The point of the PLRA exhaustion requirement is to allow prison officials a fair opportunity to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (internal quotation marks omitted). Accordingly, defendant Zamarron's motion for summary judgment should be granted as to Jones' retaliation claim.

C.     **Access to the Courts**

Jones alleged what is known as a "backward-looking" access to the courts claim. The essence of such a claim is that the plaintiff once had a claim that "cannot now be tried (or tried with all material evidence) [because] . . . official acts claimed to have denied access may allegedly have caused the loss or inadequate settlement of a meritorious case." *Christopher v. Harbury*, 536 U.S. 403, 414-15 (2002). In contrast, in a forward-looking access to the courts claim, the plaintiff alleges that official action is presently precluding the plaintiff from litigating a

11

still-available claim. *Id*. at 413. Regardless of the type of claim asserted, a plaintiff must allege the existence of a "nonfrivolous, arguable underlying claim," *id*. at 415 (internal quotation marks omitted), and "a remedy that may be awarded as recompense but not otherwise in some suit that may yet be brought," *id*.

As summarized by the Sixth Circuit, the elements of a backward-looking denial of access claim are: "(1) a non-frivolous underlying claim; (2) obstructive actions by state actors; (3) substantial prejudice to the underlying claim that cannot be remedied by the state court; and (4) a request for relief which the plaintiff would have sought on the underlying claim and is now otherwise unattainable." *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013) (internal quotation marks, citations, and brackets omitted).

Here, Jones' access to the courts claim fails because he failed to show "substantial prejudice" to the underlying claims raised in his post-conviction motion for relief from judgment. *See, e.g., Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir.1996) ("Plaintiffs [*pro se* state prisoners] must demonstrate, for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim"); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) ("Apart from his conclusory statement that the defendants impaired his right of access [by opening a piece of his mail], [*pro se* prisoner] Boswell does not explain how he suffered harm").

Jones' claim of actual prejudice in this case is conclusory, because he failed to allege the exact nature of the meritorious claims that he wanted to present to the state trial court in his MCR 6.500 motion for relief from judgment. *See, e.g., Mikko v. Davis*, 342 F.Supp.2d 643, 648 (E.D. Mich. 2004) (for a prisoner plaintiff to succeed on his claim that the defendants denied

12

him access to the court by failing to file his writs for superintending control and mandamus, "[p]laintiff must show that his underlying claim, the motion for relief from judgment under Michigan Court Rules 6.500, would have been successful if not for the failure of the Defendant to file the writs.").

Here, the gist of Jones' access to the courts claim is that he filed the motion for relief from judgment without copies of the trial transcripts or the sentencing transcript. Jones did file a motion for relief from judgment on or about August 27, 2018, and attached a copy of the motion and memorandum to his complaint. *See* Motion and Memorandum (ECF No. 1-1, PageID.92-110). The state trial court denied the motion on October 30, 2018, summarizing the substance of Jones' motion as follows, "defendant argues that the Court should not have instructed on, and the jury should not have been allowed to consider, the offense of second degree murder for which he was convicted." Opinion (Oct. 30, 2018) (ECF No. 1-1, PageID.91). Jones also filed a motion for reconsideration (PageID.111-117).

Jones did not provide even the most skeletal summary of how the allegedly missing transcripts would demonstrate that he was actually innocent of committing the crime (second degree murder) and why his motion would have succeeded. Nor does he state how the sentencing transcript would establish that he was not a habitual offender.[5] In short, Jones has failed to show an actual injury to sustain a cause of action for a violation of his right to access of the courts. *See Mikko*, 342 F.Supp.2d at 648. *See also, Jennings v. Garrett*, No. 08-12463, 2008 WL 2605541 at *2 (E.D. Mich. July 1, 2008) ("Plaintiff's claim of actual prejudice in this case is entirely

---

[5] In this regard, it appears that Jones had access to some of his trial transcript which he cites in his memorandum in support of the motion for relief from judgment. *See* PageID.96.

conclusory, because he has failed to allege the exact nature of the claims that he sought to present to the Michigan courts in his 6.500 motion for relief from judgment. Without any information on the validity of the motion for relief from judgment, plaintiff has failed to show an actual injury to sustain a cause of action for a violation of his right to access of the courts.") (internal citation omitted).

Furthermore, Jones' access to the courts claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). As the Sixth Circuit explained,

> *Heck* blocks a state prisoner's § 1983 claim if its success "would necessarily imply the invalidity of his conviction or sentence." 512 U.S. at 487, 114 S.Ct. 2364. The idea is to channel what amount to unlawful-confinement claims to the place they belong: habeas corpus. *Wilkinson v. Dotson*, 544 U.S. 74, 81, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005).
>
> Whether *Heck* applies to an access-to-the-court claim alleging state interference with a direct criminal appeal is a new question for us. That it is a new question, however, does not necessarily make it a hard question. Because the right of access is "ancillary to [a lost] underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court," a successful access claim requires a prisoner to show that the defendants have scuttled his pursuit of a "nonfrivolous, arguable" claim. *Christopher v. Harbury*, 536 U.S. 403, 415, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002) (quotation omitted).
>
> Sampson [the prisoner] maintains that he is entitled to damages because the defendants prevented him from using the trial transcripts and other materials in his direct – and unsuccessful – appeal. He could prevail on that claim only if he showed that the information could make a difference in a nonfrivolous challenge to his convictions. **He could win in other words *only* if he implied the invalidity of his underlying judgment. *Heck* bars this kind of claim**.

*Sampson v. Garrett*, 917 F.3d 880, 881-82 (6th Cir. 2019) (emphasis added).

Here, Jones' access to the courts claim fails because he has not presented any facts or legal arguments which imply the invalidity of his underlying convictions. *See, generally, Payne v. Sawyer*, No. 20-2064, 2021 WL 5021114 at *2 (6th Cir. May 28, 2021) (under *Heck*, a

14

plaintiff may not bring a § 1983 action to obtain damages 'where success *would necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence'") (quoting *Wilkinson*, 544 U.S. at 81 (emphasis in original).[6]  For all of these reasons, defendants' motion for summary judgment should be granted as to Jones' claims that they denied him access to the courts.

## II.    Recommendation

Accordingly, I respectfully recommend that defendants Zamarron and Sun's motion for summary judgment (ECF No. 34) be **GRANTED** and that this case be **TERMINATED**.

Dated:  February 17, 2022                            /s/ Ray Kent
                                                     Ray Kent
                                                     United States Magistrate Judge

**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[6] In this regard, the public record reflects that Jones' conviction in the state court case, *People v. Jones*, Lake County Circuit Court, No. 12-4957, was affirmed on appeal and has not been overturned in post-judgment motions.  See *People v. Jones*, No. 312250, 2014 WL 1721339 (Mich. App. April 29, 2014) (affirming Jones' conviction and sentence for second-degree murder), *People v. Jones*, 497 Mich. 856 (2014) ("On order of the Court, the application for leave to appeal the April 29, 2014 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court."); *People v. Jones*, No. 356735 (Mich. App. July 26, 2021 (delayed application for leave to appeal denied because defendant failed to establish that the trial court erred in denying the successive motion for relief from judgment), *People v. Jones*, -- Mich. -- , 2022 WL 286475 (Jan. 31, 2022) (denying leave to appeal July 26, 2021 order of the Michigan Court of Appeals because he has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)).